In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-4189

SIDNEY DAVIS, III,

*Plaintiff-Appellee*,

*v.*

CHARLES T. HUTCHINS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 5236—**George W. Lindberg**, *Judge.*

ARGUED NOVEMBER 4, 2002—DECIDED FEBRUARY 26, 2003

Before BAUER, POSNER, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* A default judgment was entered against Charles T. Hutchins, a New Jersey attorney proceeding *pro se.* The judgment awarded Sidney Davis, III, individual damages and attorney's fees and also awarded class-action damages. On appeal, we vacate the award of class-action damages and affirm the judgment as modified.

## I. History

Charles T. Hutchins has been licensed to practice law in the State of New Jersey since 1988. From February

2000 through January 2002, he served as in-house counsel to Goldman & Company. According to Hutchins, Goldman is a debt collection organization that specializes in seeking restitution for its customers from individuals who make payment with nonsufficient-fund-checks.

In August 2000, a form debt-collection letter was sent to Davis, a Chicago, Illinois resident. The letter reads as follows:

**CHARLES T. HUTCHINS**
ATTORNEY AT LAW
GOLDMAN & COMPANY
HARMON COVE TOWER ONE SUITE AL-13
SECAUCUS, NEW JERSEY 07094


DATE: 08/11/00
CASE NO. 009437258
AMOUNT DUE: $216.73
RE: BURLINGTON COAT FACTORY SC
* * *

Dear SIDNEY DAVIS III,

I have been retained by the above-referenced client to assess the possibility of taking legal action against you. This matter involves the issuance of fraudulent checks. Issuance of fraudulent checks is a violation of criminal state statute. The law provides my client with certain legal remedies to enforce their claim. They may file a criminal complaint with local authorities seeking criminal charges against you. If you are prosecuted and convicted, you may have a permanent criminal record. If my client decides to sue civilly, you may receive a summons at home or work that may require a court appearance. Losing the lawsuit may allow the court to order garnishments of your wages, attachment of bank accounts and seizure of property.

This matter was previously placed with a collection agency that made numerous unsuccessful efforts at a resolution. This is a serious matter involving possible violation of state law and will be your last opportunity for amicable resolution. THE CHOICE IS YOURS. You can avoid the possibility of the aforementioned criminal and/or civil action only by paying the total amount due within 10 days.

\* \* \*

Sincerely,

PAUL ANDERSON
201-392-0500 Ext. 200

Some months thereafter, Davis filed a class-action complaint against Hutchins,[1] alleging that he had violated various sections of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (2003), including § 1692e(3) (false representation of attorney involvement), § 1692e(5) (false threat to sue and misleading statement of legal consequences of a lawsuit), § 1692e(11) (failure to provide "Mini-Miranda" notice), and § 1692g (failure to provide statutorily required validation notice).

In the complaint, Davis defined the proposed class as all persons in Illinois from whom Hutchins attempted to collect a debt allegedly owed to Burlington Coat Factory,

---

[1] It is not entirely clear from the record why the action was filed only against Hutchins rather than against the company for which he allegedly worked. According to Davis's attorney, in response to a question at oral argument, Goldman & Company does not exist; therefore, he sued Hutchins, the only real person he could find connected with the company. Hutchins disputes the fact that Goldman is a fiction, but this issue has no bearing on our decision, so we need not delve any deeper into this mystery.

within one year before the filing of the complaint. As the only named plaintiff in the complaint, Davis sought to be appointed as representative of the class, which he alleged consisted of more than 30 persons.

Hutchins was served with the complaint on August 6, 2001. He then chose to represent himself in this matter, and the following debacle ensued.

Hutchins responded to the complaint by mailing a document entitled "Brief in Support of Motion to Dismiss" to the clerk of the district court in Chicago with a copy to counsel for Davis. No motion to dismiss accompanied the brief, and the brief exceeded the page limit allowed by the Local Rules of the district court. Hutchins did not send a notice of presentment, also as required by the Local Rules. Further, on the cover letter that Hutchins sent to the clerk (but not on his brief) he listed the wrong case number. As a result, on August 27, the district-court clerk misfiled the brief, and the filing did not show up on the docket for this case. To add to these transgressions, Hutchins also failed to enter an appearance.

On September 21, 2001, counsel for Davis contacted Hutchins by fax to inform him of the several deficiencies, including the fact that the court's docket did not reflect that Hutchins had filed anything. Davis's attorney indicated that he would move for a default if Hutchins did not file a proper response to the complaint.

In turn, Hutchins made multiple calls to the district court case manager and the trial court's courtroom deputy clerk regarding the status of his "motion." At some point during these calls Hutchins realized that he had put the wrong case number on the cover letter and suggested to the case manager that his brief might be found under that wrong number.

On September 25, the courtroom deputy clerk called Hutchins to inform him that his brief had been located, but

that the notice of presentment was missing and the page limit had been exceeded. She told him that she would return the documents to him and he could make corrections. During this call, she also informed Hutchins that an initial status hearing on the case had been set for October 4. Hutchins asked her if he needed to appear telephonically at the October 4 status conference. According to Hutchins, she informed him that if he returned the corrected documents there would be no need to appear, and further, that the court generally did not require personal appearances for a motion to dismiss.

On September 28, Davis's attorney faxed Hutchins a document-production request, an interrogatory, and a request that Hutchins contact him for a discovery conference. Hutchins responded to the requests by faxing the cover sheet back to Davis's attorney with a handwritten notation stating, "You guys are pretty funny!" with a smiley face drawn after the statement. This was the only response Hutchins ever made to the discovery requests.

Three days later, on October 1, Davis filed a motion for default. The motion for default was sent to Hutchins with a notice that it would be presented on October 4 at the previously scheduled status hearing.

Hutchins returned his "Brief in Support of Motion to Dismiss" to the court on October 2, and noticed it for hearing on October 10. He also filed a motion to accept a brief in excess of the page limit. Again, however, he failed to file an actual motion to dismiss or enter an appearance.

On the morning of October 4, Davis, by his counsel, appeared before the district court for the status hearing and to present his motion for default. Hutchins failed to show. The courtroom deputy clerk explained at the beginning of the hearing that Hutchins's original brief had been misfiled and contained certain errors, but that the problems appeared to be corrected.

Davis's attorney, however, argued that default was still appropriate based on the fact that Hutchins had still not filed an appearance, that he had not filed a proper response to the complaint, and that he had responded to counsel's discovery requests with a flippant refusal to participate in discovery. The district judge ordered default entered against Hutchins and thereafter set November 1 as the date for the damage prove-up.

Though default had been entered, the hearing for Hutchins's motion to dismiss remained on the court's docket for October 10. On that day, Davis's attorney appeared to oppose the motion, but once again Hutchins failed to show. Consequently, the district court struck Hutchins's motion for want of prosecution. Apparently, also on October 10, the clerk's office received by mail Hutchins's motion for reconsideration of the court's default order, which he noticed for hearing on October 17.

On October 17, Hutchins actually appeared in court to argue his motion to reconsider the default entry. The judge, however, did not find satisfactory his explanations for why he still had not filed an appearance, why he failed to comply with the local rules on filing motions, why he refused to participate in discovery, and why he failed to appear at either the October 4 or October 10 hearings. Not surprisingly, the motion to reconsider was denied.

On October 23, Davis filed a brief in support of his damages claim. Davis sought actual damages of $1000, statutory damages of $1000, and attorney's fees of roughly $18,000. On behalf of the class, Davis sought a $500,000 statutory damage award.

Hutchins did not file a brief opposing the damages claim. He did file a brief on October 29 in opposition to class certification, in which he argued that Davis could not satisfy the numerosity requirement or show that his claim

was typical to the proposed class. He did, however, attach an affidavit to the brief that asserted that his salary at Goldman was $52,000 per year, that he had over $100,000 in law-school loans, and $15,000 in unsecured debt, and therefore had no ability to satisfy Davis's requested judgment.

On November 1, 2001, the date set for the original damage prove-up hearing, Hutchins again failed to attend. The district court, however, decided not to determine damages at that time because Hutchins had (prematurely) filed an appeal with this Court. The district court stated that it would rather wait until we dismissed the premature appeal before ruling on damages. Therefore, the district court reset the damage prove-up hearing for November 21. At our behest, Hutchins filed a motion for voluntary dismissal, and we dismissed the appeal on November 8.

On November 21, the district court held the hearing for damage prove-up. Once again, Hutchins failed to appear. The district court entered a default judgment against Hutchins of $2000 for actual and statutory damages, $500,000 in damages for the class, and $18,861.75 for attorney's fees and costs.

Following the entry of default judgment against him, Hutchins brought this appeal, claiming that the district court's judgment violated his Fifth Amendment Due Process rights and that the district court erred in entering the default and in granting class-action damages.

Oral argument before this Court was originally set for September 24, 2002. When the case was called, we discovered that Hutchins was not present. On our own motion, ascribing his absence to a clerk's office error, we reset oral argument for November 4, 2002. Both parties appeared and oral argument was held.

## II.  Analysis

### A.  Procedural Due Process

Hutchins argues that the entry of a default judgment in an amount in excess of $500,000 violates his due process rights because, according to him, it deprives him of his property without a hearing. "Due process does not, of course, require that the defendant in every civil case actually have a hearing on the merits." *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971). Indeed, in most cases where default is entered there is by definition no hearing on the merits. *Id.* Rather, due process is satisfied when the defendant is given notice and an opportunity to respond. *Sports Center, Inc. v. Brunswick Marine*, 63 F.3d 649, 651 (7th Cir. 1995).

There can be no dispute in this case that Hutchins was afforded notice and the opportunity to respond. He received notice of the motion for his default. He knew that a hearing would be held on October 4 at which the plaintiff would argue for default. Hutchins simply did not attend the hearing. Further, he did not appear to argue his own motion to dismiss on October 10. And before the entry of the default judgment, Hutchins failed to attend two separate hearings on the issue of damages. Given the several opportunities Hutchins had to respond, as well as adequate notice of these opportunities, his due-process argument is unavailing.

### B.  Entry of Default

Hutchins also argues that the district court's entry of default, default judgment, and denial of his motion to

reconsider the entry of default were erroneous.[2] We review the district court's entry of default, the default judgment, and the trial court's disposition of a motion to reconsider a default judgment under an abuse-of-discretion standard. *Robinson Eng'g Co. Pension Plan & Trust v. George*, 223 F.3d 445, 448 (7th Cir. 2000).

Generally, we have held that the district court is justified in entering default against a party and refusing to vacate the default if the defaulting party has exhibited a willful refusal to litigate the case properly. *See Hal Commodity Cycles Mgmt. Co. v. Kirsh*, 825 F.2d 1136, 1138 (7th Cir. 1987) ("[A]n appellate court will not reverse the denial of Rule 60(b) relief when entry of the default judgment resulted from the defaulting party's willful refusal to comply with the minimum standards of conduct expected of all litigants"); *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir. 1984) ("Where it appears that the defaulting party has willfully chosen not to conduct its litigation with the degree of diligence and expediency prescribed by the trial court, this circuit has repeatedly upheld the trial court's [refusal to grant relief from the default]"). We have noted that this willfulness is shown in a party's continuing

---

[2] We note that neither Hutchins nor the district court specify whether the "motion to reconsider" was brought under Rule 55(c), Rule 59(e), or Rule 60(b). Because at the time the motion was made a final order or judgment had not yet been entered, we assume it was not a Rule 60(b) motion. And because it was essentially a challenge to the entry of default, we think it most appropriate to consider it as a Rule 55(c) motion. Because "the standard to set aside an entry of default under Rule 55(c) is essentially the same as the standard for vacating a default judgment under Rule 60(b)," any practical impact regarding how we construe the motion is negligible. *Chrysler Credit Corp. v. Macino*, 710 F.2d 363, 367 (7th Cir. 1983); *see also* 10A WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2694 (3d ed. 1998).

disregard for the litigation or for the procedures of the court. *Inryco Inc. v. Metro. Eng'g Co.*, 708 F.2d 1225, 1231 (7th Cir. 1983).

After reviewing the facts of the case before us, we find that the lengthy list of Hutchins's failings displays a willful choice not to exercise even a minimum level of diligence. While some of the requirements may be more technical than substantive, his unwillingness to abide by them shows a disregard for the most basic rules that ensure efficiency in litigation. First, Hutchins did not file an appearance until October 17, 2001, over two months after he received the complaint and thirteen days after the district judge had ordered default entered against him. The only reason he filed an appearance at this point was because the district judge and court clerk informed him at the October 17 hearing that he needed to do so.

Second, Hutchins's attempted responsive pleading, even assuming that the case-number and misfiling mix-up was not entirely attributable to him, was woefully inadequate. His "Brief in Support of Motion to Dismiss" was not accompanied by an actual motion to dismiss and exceeded the specified page limit. Moreover, he did not file a notice of presentment along with his "motion." All of these requirements are plainly set forth in the Local Rules of the district court.

Third, he responded to the plaintiff's requests for discovery and a discovery conference with the totally unprofessional and extraordinarily flippant answer of "You guys are pretty funny!" and a smiley face. This approach to discovery practice is completely unacceptable, and Hutchins offers no satisfactory explanation, nor could he, as to what might justify such a response.

Fourth, Hutchins did not attend the October 4 hearing at which the district judge ordered default entered against him. Just as he does in attempting to explain his

failure to file an appropriate responsive motion, he blames his absence on someone else, claiming that the courtroom deputy told him on September 25 that if he returned a corrected motion to dismiss to the court, there would be no need for him to appear telephonically or otherwise at the initial status hearing on October 4.

We note at the outset that Hutchins does not, in his appellate brief, cite to any portion of the record to support this version of the facts, and our review of the record reveals none. Even assuming, however, that Hutchins's version is correct, we are not satisfied with his excuse. Relying only on oral representations by a courtroom deputy clerk as to when you need to be present for a hearing is an extremely precarious way to conduct one's defense.

Further, five days after the alleged conversation, Davis filed a motion for default and noticed it for hearing on October 4. Hutchins was fully aware that the default motion would be presented on October 4. Surely, Hutchins should have realized that the courtroom deputy clerk's statement (assuming such statement was made) about not needing to appear for an initial status hearing was no longer operative since this was now a hearing on default. Yet despite the changed nature of the hearing, Hutchins still did not attend.

That Hutchins's actions leading up to the entry of default were not just a series of unfortunate miscommunications and missteps is bolstered by his continuing willful disregard and refusal to appropriately participate in the litigation following the default entry. He did not appear to present his motion to dismiss on October 10. He did not appear at either of the scheduled hearings on damages, nor did he file any briefs with the court regarding damages.

While any single one of Hutchins's actions or omissions alone might not have warranted a default (although we

do not foreclose that possibility), when we look at the entire scenario it is clear that Hutchins exhibited a continuing and willful disregard for this litigation and for the procedures in federal court.

Furthermore, this is not a scenario where an unscrupulous plaintiff and his attorney have taken advantage of an unwary defendant. Here, Davis's attorney notified Hutchins that his filing did not show up on the district court docket, notified him that his filing did not comply with local rules, gave Hutchins the web address where the local rules could be accessed, warned him that if the errors were not corrected he would seek default, gave him time to correct the problems, and notified him when he filed his motion for default. All this is capped off by the fact that Hutchins is a licensed attorney.

Consequently, we find that the district court did not abuse its discretion by ordering Hutchins defaulted or by refusing to vacate the default entry.

## C. Damages

At the completion of the November 21 damage prove-up hearing, the district court entered default judgment against Hutchins, awarding Davis all damages sought: actual and statutory individual damages of $2000 pursuant to § 1692k(a)(1) and § 1692k(a)(2)(A) of the FDCPA, costs and attorney's fees of $18,861.75 pursuant to § 1692k(a)(3), and $500,000 in class damages pursuant to § 1692k(a)(2)(B), which allows for a class recovery not to exceed the lesser of $500,000 or 1% of the net worth of the offending debt collector.

Hutchins raises no valid objection to the entry of actual and statutory individual damages; thus, we will affirm those damages against him. Hutchins also raises no objection to the entry of costs and attorney's fees, which are

awarded under the FDCPA to any plaintiff succeeding in an action to enforce the act; therefore, we will affirm this aspect of the judgment.

Hutchins objects to the class-action damages because, he claims, Davis cannot satisfy the four basic requirements of Federal Rule of Civil Procedure 23(a) for class certification.[3] Further, he maintains that the $500,000 award exceeds the amount allowed by the § 1692k(a)(2)(B) because in order to justify this judgment his net worth would have to be greater than $50,000,000, whereas his actual net worth is negative.

Putting these arguments aside, we find a more fundamental problem with the award of class damages in this case. Although the district court awarded class damages, no class was certified as required by Rule 23(c)(1).[4] Class damages cannot be awarded if no class is certified. *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir. 1974) ("Relief cannot be granted to a class before an order has been entered determining that class treatment is proper."); *see*

---

[3] Federal Rule of Civil Procedure 23(a) provides that "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)

[4] Federal Rule of Civil Procedure 23(c)(1) states: "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."

*also* 7B Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1785 (3d ed. 1998).

Davis, while admitting that the district court never actually certified the class in this case, appears to argue that the class was effectively certified by the entry of default, apparently basing this claim on the principle that when a judge orders a default entered, the factual allegations in the complaint are deemed to be admitted by the defendant. And since the complaint alleged facts necessary to satisfy the requirements of Rule 23(a), the defendant has admitted those facts to be true.

There is the general principle that factual allegations in the complaint are deemed admitted by the defendant upon default; however, application of that general principle does not solve the class-certification issue. Rule 23(c) imposes an independent duty on the district court to determine by order that the requirements of Rule 23(a) are met regardless of the defendant's admissions. No such judicial determination was made here.

The Supreme Court has made clear that a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," and "actual, not presumed, conformance with Rule 23(a) remains . . . indispensable. *Gen. Tele. Co. of the S.W. v. Falcon*, 457 U.S. 147, 160-61 (1982). The requirement that the district court conduct this "rigorous analysis," among other things, serves the important function of protecting absent class members whose rights may be affected by the class certification. *Davis*, 490 F.2d at 1366 ("Because the class action determination affects the rights of class members not before the court, as well as named plaintiffs and defendants, it is not sufficient that plaintiffs make an uncontested motion for a class determination. The Rules impose the additional requirements of class determination and definition on the

district judge."); *see also* 7B WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1785 (3d ed. 1998) ("A formal class certification determination plays an important role in assuring adequate protection to the absent class members. The judge in reviewing whether all the criteria of Rule 23 are satisfied can consider possible conflicting interests, and can redefine the class to accommodate those concerns or utilize notice to ensure that the class members have an opportunity to be heard."). Allowing certification by default or because the defendant has admitted that the class exists, with no independent analysis or determination by the district judge, would remove this important protection.

With no class certification, § 1692k(a)(2)(B) is not applicable and no class damages can be awarded pursuant thereto.

### III. Conclusion

Because no class was certified in this case, the $500,000 award of class damages is vacated. The district court properly granted the individual damages award to Davis of $1000 in actual damages, $1000 in statutory damages, and $18,861.75 in attorney's fees and costs. As so MODIFIED, the district court's default judgment is AFFIRMED. Post-judgment interest shall accrue from the date of the original judgment.

A true Copy:

      Teste:

                         _____
                         *Clerk of the United States Court of Appeals for the Seventh Circuit*