PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

KIRTHI VENKATRAMAN,
　　　　　　*Plaintiff-Appellant,*

v.

REI SYSTEMS, INCORPORATED,
　　　　　　*Defendant-Appellee.*

⎱　No. 03-1679

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CA-03-278-A)

Argued: February 25, 2004

Decided: July 29, 2005

Before WIDENER and DUNCAN, Circuit Judges, and
William D. QUARLES, Jr., United States District Judge
for the District of Maryland, sitting by designation.

---

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Judge Duncan and Judge Quarles concurred.

---

## COUNSEL

Naren Chaganti, Town & Country, Missouri, for Appellant. Merrell
B. Renaud, SQUIRE, SANDERS & DEMPSEY, L.L.P., Tysons Cor-
ner, Virginia, for Appellee.

**OPINION**

WIDENER, Circuit Judge:

Alleging racial and national origin discrimination, wrongful discharge, and violations of federal immigration law, Kirthi Venkatraman sued his former employer, REI Systems, Inc. (REI). The district court dismissed the complaint, and we affirm.

I.

Venkatraman is an American citizen of East Indian origin. He worked for REI as a software engineer from July 2001 until March 2002, when he was fired. His complaint alleges that REI only paid "full overtime consideration" to white employees and that he was "not compensated on par with white employees." He alleges that REI allegedly fired him when he complained of this unequal treatment, and he suffered emotional distress as a result.

Venkatraman also claims that in order to hire foreign workers under the H-1B visa program, REI violated 8 U.S.C. § 1182(n) by falsely representing to the Immigration & Naturalization Service that a shortage of qualified U.S. workers existed. According to the complaint, REI also misrepresented that it would pay its H-1B workers the same as its U.S. workers, when it in fact intended to pay the foreign workers less.

The complaint asserts claims of "employment discrimination — unequal treatment" (First); "wrongful discharge in violation of public policy" (Second); "infliction of emotional distress" (Third); and "violation of U[.]S[.] immigration laws" (Fourth). REI moved to dismiss, and the district court granted the motion. Venkatraman now appeals the dismissal of the First, Second, and Fourth causes of action.

II.

We review *de novo* a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6). In general, a motion to dismiss will not be granted unless a plaintiff can prove no set of facts which would

support his claim and entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In considering a motion to dismiss, we accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff. *Mylan Labs, Inc. v. Maktari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

A.

Venkatraman first contends that the district court erred in dismissing his employment discrimination claim. The district court construed this claim, which alleges that REI paid Venkatraman less than its white workers and fired him for complaining of this treatment, as arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (2003). It then dismissed the claim for failure to exhaust administrative remedies.

Before filing a Title VII suit, a plaintiff in Virginia must file a charge with the Equal Employment Opportunity Commission (EEOC) within 300 days of the alleged violation. *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 (4th Cir. 2002). As the district court recognized, this statutory prerequisite is mandatory: a violation not made the subject of a timely charge is "the legal equivalent of a discriminatory act which occurred before the statute was passed" and is "merely an unfortunate event in history which has no present legal consequences." *United Air Lines v. Evans*, 431 U.S. 553, 558 (1977).

Venkatraman does not dispute that he failed to file a charge with the EEOC. Instead, he argues that Count I alleges facts sufficient to support a claim under Title VI, which prohibits discrimination "under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d (2003). REI counters that Venkatraman waived the Title VI argument because he failed to raise that jurisdictional basis before the district court.

Initially, we note that the precise question at issue is whether Venkatraman has stated a cause of action under Title VI, not whether federal jurisdiction exists under Title VI. See *Montana-Dakota Util. Co. v. N'western Pub. Svc. Co.*, 341 U.S. 246, 249 (1951) ("As frequently happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the ques-

tion whether the complaint states a cause of action."). Jurisdiction exists over Venkatraman's discrimination claim under 28 U.S.C. § 1331. Whether construed under Title VI or Title VII, it arises under the laws of the United States.

Nevertheless, we agree that Venkatraman waived the Title VI argument by failing to raise it below. Federal Rule of Civil Procedure 8(a) requires only "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47 (footnote omitted). But Venkatraman, of East Indian ancestry, gave REI no indication of the grounds upon which Count I rests other than plaintiff "was not compensated on par with white employees." He did not mention Title VI in either his complaint or his opposition to REI's motion to dismiss. Nor did he allege facts showing that REI received federal financial assistance, or that providing employment is a primary objective of the federal aid. See *Trageser v. Libbie Rehab. Hosp.*, 590 F.2d 87, 88-89 (4th Cir. 1978) (discussing elements of a Title VI claim).

Plaintiff further contends that the complaint indicates the potential for Title VI liability by stating that "REI further violated federal laws regarding nondiscrimination as a Federal Government subcontractor." This statement does not signal a potential Title VI claim, because REI's status as a government contractor is irrelevant to Title VI liability. Title VI coverage turns on the receipt of "federal financial assistance", not the existence of a contractual relationship. To the contrary, the regulations implementing Title VI, the legislative history, and cases interpreting the term all indicate that market contracts between federal contractors and the government do not constitute such "assistance." Only if the government intends to provide a subsidy does Title VI apply. See, e.g., 45 C.F.R. § 80.13(f) (2004) (defining "federal financial assistance"); Letter from Robert Kennedy, Attorney General, to Hon. John Sherman Cooper (April 29, 1964), *reprinted in* 110 Cong. Rec. 10075, 10076 (1964) ("Title VI does not apply to procurement contracts, or to other contracts which do not involve financial assistance by the United States."); *Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1209-11 (9th Cir. 1984) (holding that an entity receives "assistance" when it receives a subsidy, as opposed to compensation). Because Title VI does not forbid discrimination by a government contractor, but instead forbids discrimination by entities

receiving assistance, the complaint's statement fails as an indicator of Title VI liability.

In short, neither the district court nor REI had notice that Venkatraman intended to rely on Title VI, much less a factual recitation of the elements of a Title VI claim. See *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993) (noting that issues raised for the first time on appeal are waived unless plain error or a fundamental miscarriage of justice would result).

Venkatraman argues that the "fundamental miscarriage of justice" exception to *Muth* should apply, since the district court failed to give him the opportunity to raise his Title VI argument. However, the district court had no reason to think that Venkatraman intended to make a Title VI argument. In addition, Venkatraman's opposition to REI's motion to dismiss requests leave to amend the complaint, and stated it "*now* offers to provide the particular grounds under which the plaintiff seeks relief if a leave to amend is granted." Title VI was not among the "particular grounds listed in the plaintiff's opposition.[1] Nor would the facts alleged in the opposition support a potential Title VI claim. As a result, refusing to consider the argument for the first time on appeal would not constitute a miscarriage of justice. Thus, we do not consider Venkatraman's argument that he has stated a claim under Title VI, and we affirm the district court's decision that his failure to file an administrative charge precludes relief under Title VII.

---

[1] Grounds listed:

    (a) better job benefits to whites than non-whites

    (b) false certificate it would not replace U.S. workers

    (c) falsely certified it would pay foreign workers on par or better than U.S. workers.

    (d) falsely certified there were no equally or better qualified U.S. workers offered the job it offered to an H1-B worker

    (e) retaliated against plaintiff for his complaints about (a) through (d) above.

B.

Count II of Venkatraman's complaint alleges that his discharge "was wrongful and in violation of public policy because he asserted his right to equal treatment and REI retaliated to Mr. Venkatraman's assertion of his right to equal treatment." The complaint does not state whether the claim arose under state or federal law, nor does it mention any statute. The district court correctly interpreted the claim as either a Title VII retaliation claim, in which case Venkatraman's failure to exhaust his administrative remedies barred the claim under *Nat' R.R. Passage Corp. v. Morgan*, 536 U.S. 101, 122 (2002), or a Virginia common law claim for wrongful discharge on public policy grounds, in which case the claim was foreclosed by the Supreme Court of Virginia's decision in *Doss v. Jamco*, 492 S.E.2d 441, 446 (1997).

C.

For a fourth cause of action, Venkatraman alleges that he was a United States citizen and was discharged by REI, which had hired numerous H1-B non-immigrants by falsely representing to the INS that there was a shortage of qualified U.S. workers. He alleges that such actions are in violation of 8 U.S.C. § 1182(n) and that a private right of action for a violation of § 1182(n) must be implied because the statute does not authorize such a cause of action. The district court held that such an implied cause of action did not exist, and we agree.

This provision governs the Labor Condition Application (LCA) used by employers seeking to hire alien workers under the H-1B visa program. Under 8 U.S.C. § 1101(a)(15)(H)(i)(b) (from which the program draws its name), aliens may enter the United States under an H-1B visa to perform services in a "specialty occupation." However, an H-1B visa cannot issue unless the employer wishing to hire the alien first files an LCA that makes certain statements required by § 1182(n).[2]

---

[2]See § 1182(n)(1) ("No alien may be admitted or provided status as an H-1B nonimmigrant in an occupational classification unless the employer has filed with the Secretary of Labor an application stating the following: . . . .").

Section 1182(n) details numerous requirements for compliance.[3] It also provides for responses to violations of those requirements. Subsection (n)(2)(A) directs the Secretary of Labor to "establish a process for the receipt, investigation, and disposition of complaints respecting a petitioner's failure to meet a condition specified in an application . . . or a petitioner's misrepresentation of material facts in such an application."

The Code of Federal Regulations establishes that process. See 20 C.F.R. § 655.800-.855 (2004). "Any aggrieved party" may submit a complaint to the Department's Wage and Hour Division, which then determines whether the complaint warrants an investigation. § 655.806(a), .806-.807. See § 655.715 (defining "aggrieved party" to include a "worker whose job, wages, or working conditions are adversely affected by the employer's alleged non-compliance with the labor condition application"). If the Department conducts an investigation, it determines whether LCA violations occurred and whether penalties or administrative remedies are appropriate. § 655.805(a), .806(b). Remedies for an aggrieved worker may include reinstatement, back wages, or "other appropriate legal or equitable remedies." § 655.810(e)(2). Interested parties may seek review of the determination before an Administrative Law Judge, § 655.820-.835, and may petition the Department's Administrative Review Board to review the ALJ's decision. § 655.840, .845. Finally, the regulations contemplate review of the final agency action in the district courts. § 655.850.

Subsection (n)(5) covers complaints regarding an employer's misrepresentation or failure to state that it has offered the job in question to any U.S. worker who is equally or better qualified. It directs the

---

[3]The application must include, *inter alia*, statements that the employer will pay the H-1B aliens at "the actual wage level paid by the employer to all other individuals with similar experience and qualifications for the specific employment in question"; that the employer "did not displace and will not displace" any U.S. worker "within the period beginning 90 days before and ending 90 days after the filing of any visa petition supported by the application"; and that, prior to filing the application, the employer "has offered the job to any United States worker who applies and is equally or better qualified for the job." § 1182(n)(1)(A)(i)(I), (n)(1)(E)(i), (n)(1)(G)(i)(II).

Attorney General to establish a process for the receipt, review, and disposition of such complaints. § 1182(n)(5)(B). If the Attorney General finds that reasonable cause exists, he or she must initiate binding arbitration. The arbitrator's decision as to any failure or misrepresentation may be appealed to the Attorney General, with review of that decision in a United States Court of Appeals. See § 1182(n)(5)(D). Administrative remedies, including monetary penalties, are again authorized. § 1182(n)(E).

Thus, Venkatraman's complaints are subject to administrative remedy.

In determining whether to imply a private right of action when Congress has not made one explicitly, "[t]he key to the inquiry is the intent of the Legislature." *Middlesex Cty. Sewerage Auth. v. Sea Clammers*, 453 U.S. 1, 13 (1981) (citations omitted). As the Court stated in *Karahalios v. Nat'l Fed'n of Fed. Employees*:

> Unless such "congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Thompson v. Thompson*, 484 U.S. 174 (1988). It is also an "elemental canon" of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies. *Transamerica Mortgage Advisers, Inc v. Lewis*, 444 U.S. 11, 19 (1979). In such cases, "[i]n the absence of strong indicia of contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate." *Middlesex Cty Sewerage Auth. v. Sea Clammers*, 453 U.S. 1, 15 (1981).

489 U.S. 527, 532-33 (1989). See also *Northwest Airlines, Inc. v. Transp. Workers Union*, 451 U.S. 77, 97 (1981) ("The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement."). As in *Karahalios*, the statute in question here "expressly provides a remedy," and we are thus especially reluctant to provide additional. We

are of opinion and hold that an implied private right of action in favor of Venkatraman is not implied under 8 U.S.C. § 1182(n) and affirm the district court.

The judgment of the district court is accordingly

*AFFIRMED.*[4]

---

[4]The third cause of action contained in the complaint is a complaint of emotional distress on account of plaintiff's discharge. While not raised on appeal, it is worthwhile to note that that aspect of the complaint was dismissed by the district court under *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991), because the complaint did not allege conduct which had "been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Quoting *Russo* at 162.)

The motion of REI to file a supplemental brief is denied.