PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DAVID PARTINGTON, Reverend; LESLIE
S. HOLLOWELL; ELVIS H. HESTER, JR.;
PHYL WIGAL; THOMAS H. ADAMS;
DAVID L. ARMBRISTER; JACQUELINE
M. ARMBRISTER; LARRY W.
ARMBRISTER; CAROLYN Q.
ARMBRISTER; SHERMAN H.
BLANKENSHIP; ALICE S. CARR;
FRANCIS LENTZ; HELEN LENTZ; ALLEN
E. SMITH; DRAPER VALLEY BAPTIST
CHURCH,

                    *Plaintiffs-Appellants,*

                    v.                                     No. 04-2279

AMERICAN INTERNATIONAL SPECIALTY
LINES INSURANCE COMPANY; AIG
TECHNICAL SERVICES, INCORPORATED,

                    *Defendants-Appellees.*

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
Frank W. Bullock, Jr., District Judge.
(CA-03-1084-1)

Argued: October 26, 2005

Decided: March 30, 2006

Before LUTTIG, MICHAEL, and GREGORY, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion.
Judge Gregory wrote the opinion, in which Judge Luttig and Judge
Michael joined.

## COUNSEL

**ARGUED:** John Francis Bloss, Sr., CLARK, BLOSS & WALL, P.L.L.C., Greensboro, North Carolina, for Appellants. Bradley Reed Johnson, WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Winston-Salem, North Carolina, for Appellees. **ON BRIEF:** Allan R. Gitter, Ronald R. Davis, WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Winston-Salem, North Carolina, for Appellees.

## OPINION

GREGORY, Circuit Judge:

The Reverend David Partington and fourteen others (collectively "the Appellants") appeal the decision of the District Court for the Middle District of North Carolina to dismiss their case under Federal Rule of Civil Procedure 12(b)(6). In prior litigation, Partington obtained a default judgment against Charterhouse Group, Ltd. ("Charterhouse") in favor of himself and a class of similarly situated persons. The Appellants seek to use the default judgment to stand in the place of Charterhouse to recover from Charterhouse's insurers, American International Specialty Lines Insurance Company and AIG Technical Services, Inc. (collectively "the Insurers"). The North Carolina district court below reasoned that the Appellants had failed to state a claim upon which relief could be granted because the proffered default judgment was: (1) void for lack of subject matter jurisdiction; and (2) unenforceable in that it awarded damages to an uncertified putative class.

For the reasons discussed below, we conclude that the district court erred in holding the default judgment void. In addition, we hold that although the judgment is unenforceable with respect to the putative class members, Partington himself has a valid judgment in his favor. Accordingly, we affirm the dismissal with respect to the plaintiffs other than Partington, but vacate the dismissal and remand with respect to Partington's individual claim.

## I.

This appeal arises from a somewhat complicated procedural history as two lawsuits with various defendants are relevant to our discussion.[1] The facts giving rise to the first suit, which we will refer to as "the Virginia litigation," began when Partington, a Presbyterian minister, decided to plan for his retirement. To that end, Partington's church engaged the services of Charterhouse, a provider of trustee services, in establishing a trust for Partington. However, in 1999, Partington's financial plans fell through when Charterhouse used the trust proceeds to purchase investments that time revealed were worthless.

When Partington discovered the following year that the money in the trust was lost, he brought suit in the United States District Court for the Western District of Virginia against Charterhouse and its individual officers and directors. He premised liability on violations of the Securities Act of 1933 ("the Act" or "the 1933 Act") and various state law claims. J.A. 114-32. Partington brought that suit on behalf of himself, his trust, and a putative class of similarly situated individuals.

When Charterhouse notified the Insurers about the lawsuit, they refused to defend or indemnify Charterhouse, claiming that its actions were not covered by the insurance agreement. Thereafter, Charterhouse did not appear in the Virginia litigation, and the clerk entered its default.

Meanwhile, Partington's suit proceeded against the individual defendants who did appear to defend the action. They separately filed motions to dismiss on various grounds, including that Partington was not the true purchaser of the securities. Under the Act,

> Any person who . . . offers or sells a security in violation of section 77e of this title . . . shall be liable . . . to *the person purchasing such security* from him, who may sue either at law or in equity in any court of competent jurisdiction, to

---

[1] Because this appeal arises on a motion to dismiss, we recite the facts as alleged by the Appellants. *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).

> recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77l(a) (emphasis added). The district court denied the individual defendants' motions to dismiss on March 21, 2001, reasoning that "many of the Defendants' arguments are simply premature and factually based." J.A. 263-64.

Thereafter, on November 8, 2001, the Virginia district court ordered that a default judgment be entered against Charterhouse in favor of "plaintiff and the class of similarly situated persons as defined in the Second Amended Complaint." *Id.* at 27-28. The district court set the amount of the judgment at $8,476,979.53. The record contains several lists of Charterhouse investors, whose investments total that amount. *See id.* at 30-38.

Several months later, on February 15, 2002, the Virginia district court reconsidered, sua sponte, the individual defendants' motions to dismiss and converted them to motions for summary judgment. It stated, "[t]he Court's consideration of the entire record and the arguments before it makes it believe that it erred in failing to dismiss the entire claim at an earlier stage of the litigation." *Id.* at 161. It held that Partington was not the "person purchasing" the securities under the Act, and therefore did not have standing to bring his claim. *Id.* at 164-65.

At that time, the Virginia district court also ruled on Partington's previously filed motion for class certification. Because Partington was not a "person purchasing" under the Act, the court determined that he was not typical of the class he sought to represent under Federal Rule of Civil Procedure 23. Moreover, the court decided that even if brought by a proper plaintiff, a class action would not be the superior method for adjudicating the controversy. It therefore declined to certify the class. Also, because the district court dismissed the federal question claim over which it had original jurisdiction, it dismissed Partington's remaining state-law claims without prejudice pursuant to 28 U.S.C. 1367(c)(3). The district court made no reference to the effect of its decision on the previously entered default judgment

against Charterhouse. On appeal, the Fourth Circuit affirmed the determination that Partington lacked standing under the Act and the resulting denial of class certification. *Smith v. Pennington*, 352 F.3d 884, 886 (4th Cir. 2003).

The second lawsuit, which is the one presently before us and which we will refer to as "the North Carolina litigation," arose from the Appellants' attempts to recover on the default judgment. The Appellants filed this suit as a putative class action in North Carolina state court against the Insurers. They alleged that as Charterhouse's judgment creditors, they were entitled to stand in the place of Charterhouse to sue the Insurers. To that end, the Appellants alleged that the Insurers breached their contract with Charterhouse when they refused to defend or indemnify it in the Virginia litigation.[2]

The Insurers removed the action to the United States District Court for the Middle District of North Carolina on the basis of diversity jurisdiction and moved to dismiss. After receiving the Recommendation of the United States Magistrate Judge, the North Carolina district court adopted the Recommendation and granted the Insurers' motion under Rule 12(b)(6). J.A. 315-16. The district court based its conclusion that the Appellants failed to state a claim on two independent reasons. First, the district court believed that because Partington lacked standing under the Act to bring his claim, the Virginia district court never possessed subject matter jurisdiction over the case. Therefore, the default judgment was void in that the Virginia district court had no power to enter it. Second, the district court reasoned that the default judgment was unenforceable because it purported to award damages to a class that was never formally certified. *Id.* at 182-98. This appeal followed.

## II.

We review a district court's Rule 12(b)(6) dismissal of a complaint de novo. *Myers v. Loudoun County Pub. Sch.*, 418 F.3d 395, 401 (4th

---

[2]The complaint also asserted a claim for breach of duty of good faith and fair dealing/bad faith refusal to settle. J.A. 9. The district court dismissed this claim on the merits, *see id.* at 186, and that dismissal is not on appeal here.

Cir. 2005). "In general, a motion to dismiss will not be granted unless a plaintiff can prove no set of facts which would support his claim and entitle him to relief." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "In considering a motion to dismiss, we accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Id.* (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

### III.

The Appellants first challenge the North Carolina district court's conclusion that the default judgment against Charterhouse was void for lack of subject matter jurisdiction. They argue that the Virginia district court possessed jurisdiction to enter the default judgment, notwithstanding its subsequent determination that Partington lacked standing under the Act.[3] We agree.

After we heard oral argument in this case, the United States Supreme Court issued its decision in *Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235 (2006), and thereby clarified the distinction between the requirements for federal subject matter jurisdiction and the elements of a federal claim for relief. The *Arbaugh* case involved an action under Title VII of the Civil Rights Act of 1964, which prohibits discrimination by "an employer." *Id.* at 1239 (quoting 42 U.S.C. 2000e-2(a)(1)). Under Title VII, the term "employer" is defined to include persons that have at least fifteen employees. *Id.* (quoting 42 U.S.C.

---

[3]We note that although there was some disagreement between the parties as to the procedural vehicle through which the North Carolina district court below entertained this collateral challenge, the court correctly identified the "independent action" in equity preserved by Federal Rule of Civil Procedure 60(b) as the source of its authority. *See* J.A. 188-93. *See also Morrel v. Nationwide Mut. Fire Ins. Co.*, 188 F.3d 218 (4th Cir. 1999) (using a Rule 60(b) independent action as the basis for a court's review of a judgment in similar circumstances). Because we conclude, as discussed below, that the Virginia district court possessed jurisdiction, we do not reach the question of whether the lack thereof would be an appropriate ground on which to grant relief in a Rule 60(b) independent action.

2000e(b)). Because the defendant waited until after a jury verdict in the plaintiff's favor to assert that it was not an "employer," the outcome in *Arbaugh* turned upon whether the employee-numerosity requirement was a limitation on federal subject matter jurisdiction and thus an issue that could be raised at that late stage of the proceedings. *Id.* at 1241, 1242.

After acknowledging the lack of clarity in the jurisprudence regarding the distinction between restrictions on federal jurisdiction and the ingredients of a federal claim, the Court in *Arbaugh* announced a "readily administrable bright line" to resolve future confusion. *Id.* at 1245. The Court held: "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* It reasoned that "[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue." *Id.* (footnote omitted). Noting that the provision of Title VII establishing the fifteen-employee threshold did not speak in jurisdictional terms, the Court held that this was not a limitation on jurisdiction, but an element of a plaintiff's claim for relief. *Id.*

Applying this "bright line" to the present case, we conclude that Congress did not clearly indicate that the failure of a plaintiff to qualify as a "person purchasing" was a jurisdictional limitation. Rather, the statute simply provides that the "person purchasing such security . . . may sue either at law or in equity in any court of competent jurisdiction." 15 U.S.C. 77l. This language, therefore, does not restrict the federal courts' power to hear 1933 Act claims to cases brought by "person[s] purchasing." *Cf. Arbaugh*, 126 S.Ct. at 1245 n.11 (citing statutes in which Congress clearly did limit jurisdiction on the basis of certain factors). As a result, the provision makes the plaintiff's purchase an ingredient of the claim for relief, but does not curtail the broad jurisdictional grants that otherwise apply—namely, 28 U.S.C. 1331 (federal question jurisdiction) and 15 U.S.C. 77v (the jurisdictional provision of the 1933 Act).

Under *Arbaugh*, therefore, we are satisfied of the Virginia district court's jurisdiction throughout the litigation and conclude that the

North Carolina district court below erred in dismissing the Appellants' case on this basis.[4]

### IV.

Having determined that the Virginia court did not lack subject matter jurisdiction to enter the default judgment, we turn to the second basis on which the district court found that the Appellants had failed to state a claim: the default judgment purported to award damages to a class that the court later expressly refused to certify. The order of default judgment provided, "Plaintiff has established that defendant Charterhouse is liable to plaintiff and the class of similarly situated persons as defined in the Second Amended Complaint for damages in the amount of $8,476,979.53." J.A. 28.[5]

The Appellants characterize the lack of formal class certification as a "procedural defect[ ]" that the Insurers have no right to attack this in collateral litigation. Br. of Appellants 22. They also submit that the Virginia district court implicitly certified a class action through its class-wide award of damages. For the reasons discussed herein, we conclude that the putative class members cannot use the default judgment to establish that they are judgment creditors of Charterhouse. However, we disagree with the district court and the Insurers that Partington himself has failed to state a claim.

---

[4]The Insurers also argue that because Partington was not a "person purchasing," he lacked the Article III standing requirements of injury in fact, causation, and redressability. However, in granting and affirming summary judgment, and not a jurisdictional dismissal, the courts in the Virginia litigation correctly treated Partington's inability to show that he was the "person purchasing" the securities as a failure to demonstrate an element of his claim. A plaintiff does not lack Article III standing simply because he has failed to state a claim. We therefore find this argument unpersuasive.

[5]The class definition contained in the Second Amended Complaint stated that it would consist of "all persons on behalf of whom Charterhouse and its agents negligently purchased viatical settlements as investment vehicles and 'Notes' as investment vehicles, as described herein." J.A. 209. We will assume in their favor that the plaintiffs other than Partington would be members of this putative class.

A.

The Appellants premise their ability to sue the Insurers for breach of their contract with Charterhouse on the Appellants' status as judgment creditors of Charterhouse. *See, e.g.*, *Am. Auto. Ins. Co. v. Fulcher*, 201 F.2d 751, 757 (4th Cir. 1953) (stating that a judgment creditor "stands in the same position insured would have acquired if the insured had paid the judgment . . . and then sued the defendant [insurer]"). However, the instant complaint's fourteen named plaintiffs (aside from Partington) and the putative class they and Partington seek to represent do not have an enforceable judgment in their favor. This conclusion is not an impermissible collateral attack; on its face, the Virginia default judgment order is insufficient to show that the Virginia district court had the authority to bind any plaintiff other than Partington by its decision, for he was the only one who was a party to the suit.

Federal courts may only adjudicate the rights of putative class members upon certification of that class under Federal Rule of Civil Procedure 23. *See Washington v. Finlay*, 664 F.2d 913, 928 (4th Cir. 1981) (noting that members of an uncertified putative class are not bound by, and obtain no legal benefit from, a judgment on the merits). Certification is contingent upon the trial court's satisfaction "after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982). *Accord Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003); *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir. 1973); *Zepeda v. INS*, 753 F.2d 719, 728 (9th Cir. 1984). This analysis is designed to protect absent class members whose rights could be affected by the certification. *See Hutchins*, 321 F.3d at 649. Compliance with Rule 23 must be "actual, not presumed." *Gen. Tel. Co.*, 457 U.S. at 160.

The Appellants do not suggest that the Virginia district court ever explicitly certified Partington's class. However, they argue that the very act of awarding class-wide relief demonstrates that the court implicitly found the Rule 23 factors satisfied. We disagree.

As the Appellants correctly note, the Fourth Circuit has never allowed the rigorous Rule 23 analysis to be accomplished implicitly. *See, e.g.*, *Nance v. Union Carbide Corp.*, 540 F.2d 718, 724 (4th Cir.

1976) (declining to recognize implied class certification on the facts presented), *vacated on other grounds by* 431 U.S. 952 (1977). Even if we were to permit such a practice, we would not do so under the circumstances presented here.

The courts that have found a class to be certified even though no formal certification order was entered have done so only in the context of contested actions where the parties and the court acted at all times as though a class existed. *See, e.g.*, *Doe v. Bush*, 261 F.3d 1037, 1049-52 (11th Cir. 2001); *Navarro-Ayala v. Hernandez-Colon*, 951 F.2d 1325, 1334 (1st Cir. 1991); *Senter v. General Motors Corp.*, 532 F.2d 511, 521-22 (6th Cir. 1976); *Bing v. Roadway Express, Inc.*, 485 F.2d 441, 446 (5th Cir. 1973).

In addition, the Seventh Circuit—the only circuit to address the question of implicit certification in the context of a default judgment —refused to allow it. *See Hutchins*, 321 F.3d at 649. We agree with its reasoning that although a default judgment has the effect of deeming all factual allegations in the complaint admitted, it does not also have the effect of "admitting" the independent legal question of class certification. *See id.* at 648-49 ("Rule 23(c) imposes an independent duty on the district court to determine by order that the requirements of Rule 23(a) are met regardless of the defendant's admissions.").

The default judgment order here is at best ambiguous about whether the court engaged in a Rule 23 analysis sufficient to certify the class to which it awarded damages. Where a judgment or order is ambiguous, "a court 'must construe its meaning, and in so doing may resort to the record upon which the judgment was based.'" *Colonial Auto Ctr. v. Tomlin (In re Tomlin)*, 105 F.3d 933, 940 (4th Cir. 1997) (quoting *Sec. Mut. Cas. Co. v. Century Cas. Co.*, 621 F.2d 1062, 1066 (10th Cir. 1980)). Upon review of the later judgment entered by the Virginia district court, that ambiguity must be resolved against the Appellants' claims of implicit certification. As the North Carolina district court below correctly noted, the Virginia district court decided to deny Partington's motion for class certification. Thus, when the Virginia district court did engage in an analysis of the Rule 23 requirements, it explicitly found them not to be met. *See* J.A. 166-67.

It is therefore clear that the Virginia district court did not implicitly engage in this inquiry at the default judgment stage.[6]

We therefore conclude that to the extent the North Carolina district court found that the putative class members failed to state a claim, its dismissal of their claims should be affirmed.

B.

Although the Virginia district court had no power to bind the putative class members, the same cannot be said for Partington himself. The district court below seemed to assume that because the Virginia court purported to enter judgment jointly to Partington and the class, it was unenforceable in its entirety. This is not the case.

Partington was a party to the original lawsuit and the Virginia court ordered a default judgment in his favor. Doing so rendered all the factual allegations in Partington's complaint established, such that the court held Charterhouse liable to Partington. That the award to the class is invalid does not affect the status of Partington's judgment. Even on direct review, the courts refusing to award class damages absent formal certification have not invalidated awards to the individual plaintiff in the same judgment. *See, e.g.*, *Hutchins*, 321 F.3d at 649; *Romney*, 490 F.2d at 1366; *Zepeda*, 753 F.2d at 727.

The only potential problem with the order is that the amount of the default judgment is awarded jointly to Partington and all other members of the class, rendering ambiguous the amount intended for Partington individually. We do not believe this is fatal to the viability of

---

[6]The Appellants attempt to support their argument for implicit certification by contending that the Virginia district court judge would not have certified the default judgment for enforcement in another court if he did not believe class-wide relief was appropriate. We find this unpersuasive. The order granting the Appellants' motion for a certified copy of the default judgment is a pro forma, seven-line order that does not directly comment on the judgment itself. J.A. 78. Whatever inference can be drawn about the judge's views on the propriety of class-wide relief from that order is certainly outweighed by the reasoned opinion denying class certification for failure to satisfy the Rule 23 requirements.

Partington's claim. To the extent the district court deems it necessary to separate out Partington's portion of the $8 million award, as discussed above, it may look to the record to resolve this ambiguity.[7] *See In re Tomlin*, 105 F.3d at 940. *See also Spearman v. J & S Farms, Inc.*, 755 F. Supp. 137, 141 (D.S.C. 1990) (examining the record in collateral litigation to determine how to allocate an award between co-plaintiffs).

We therefore cannot conclude on this basis that Partington has failed to state a claim.

### V.

For the foregoing reasons, we affirm the district court's dismissal with respect to all plaintiffs except Partington. We vacate the dismissal of Partington's individual claim and remand it to the district court for further proceedings consistent with this opinion.

*AFFIRMED IN PART, VACATED*
*IN PART, AND REMANDED*

---

[7]Without expressing any opinion on this point, we note that the amount awarded appears to correspond to lists referenced by and attached to the Appellants' complaint allocating amounts to Partington and others. *See* J.A. 30-38.