**Roxanne ADAMS, Administrator of the Estate of Jamycheal M. Mitchell, Plaintiff,**

v.

**NAPHCARE, INC., et al., Defendants.**

**CIVIL ACTION NO. 2:16cv229**

United States District Court,
E.D. Virginia,
Norfolk Division.

Signed 03/21/2017

Mark J. Krudys, Esquire, Richmond, VA, John F. Preis, Esquire, Xenrico, VA, for Plaintiff.

Edward J, McNelis Ill, Esquire, Christopher F. Quirk, Esquire, Grace Morse–McNelis, Nicholas F. Simopoulos, Esquire, Adam J. Yost, Esquire, Alexander K. Page, Esquire, Office of the Attorney General, Mark R. Cofombell, Esquire, William W. Tunner, Esquire, Michael G. Matheson, Esquire, William D. Prince IV, Esquire, David P. Corrigan, Esquire, Jeremy D. Capps, Esquire, Maurice S. Fisher, Jr., Esquire, Richmond, VA, Jeff W. Rosen, Esquire, Jeffrey A. Hunn, Esquire, Virginia Beach, VA, Ryan F. Furgurson, Esquire, Gregory F. Holland, Esquire, Glen Allen, VA for Defendants.

## OPINION

Rebecca Beach Smith, Chief Judge

This matter comes before the court on the Motions to Dismiss ("Motions") and Memoranda in Support filed by Defendants Dale Barnes ("Barnes"), Stephano Blakely ("Blakely), Sylvester Bourne ("Bourne"), Derrick Brown ("Brown"), Doncosta Butcher ("Butcher"), Curtis Dixon ("Dixon"), William A. Epperson ("Epperson"), Robert Whitaker ("Whitaker"), Reginald Whitehead ("R. Whitehead"), and Steven whitehead ("S. Whitehead") (hereinafter referred to collectively as the "Correctional Officer Defendants," or the "Defendants")[1] on July 29, 2016. ECF Nos.

---

1. For clarity, the court notes that these Defendants are not the only Defendants in this

64–83. The Plaintiff filed a Response on August 24, 2016, ECF No. 120, and on September 1, 2016, the Correctional Officer Defendants filed a Reply. ECF No. 125.

On September 6, 2016, this court referred the Motions to United States Magistrate Judge Lawrence R. Leonard, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), to conduct hearings, including evidentiary hearings, if necessary, and to submit to the undersigned District Judge proposed findings of fact, if applicable, and recommendations for the disposition of the Motions. ECF No. 126.

Having conducted a hearing regarding the Motions on October 19, 2016, ECF No. 139, the Magistrate Judge filed the Report and Recommendation ("R & R") on February 8, 2017. ECF No. 159. The Magistrate Judge recommended denying the Motions. R & R at 1. By copy of the R & R, the parties were advised of their right to file written objections to the findings and recommendations made by the Magistrate Judge. See id. at 54–55. On February 21, 2017, the Correctional Officer Defendants filed Objections. ECF No. 163. On March 6, 2017, the Plaintiff filed a Response to the Objections. ECF No. 166. The matter has been fully briefed and is ripe for review.

## I.

This action was brought by the Plaintiff in her capacity as the administrator of the estate of Jamycheal Mitchell ("Mitchell"), who died as a pretrial detainee in the Hampton Roads Regional Jail ("HRRJ"). Compl. ¶¶ 1, 20. Relevant here, the Complaint alleges the following claims against the Correctional Officer Defendants: negligence, gross negligence, and willful and wanton negligence under Virginia law (Count One), id. ¶¶ 202–211; deprivation of civil rights through unconstitutional denial, delay, and withholding of medical care, under 42 U.S.C. § 1983 (Count Two), id. ¶¶ 212–23; deprivation of civil rights through unconstitutional conditions of detention, under 42 U.S.C. § 1983 (Count Three), id. ¶¶ 224–38; deprivation of civil rights due to unconstitutional physical abuse and excessive force, under 42 U.S.C. § 1983 (Count Four), id. ¶¶ 239–51; and a general deprivation of civil rights under 42 U.S.C. § 1983 (Count Five), id. ¶¶ 252–58.

In the instant Motions, filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the Correctional Officer Defendants seek dismissal of the aforementioned claims due to the Plaintiff's failure to show plausible factual allegations, and, regarding the state law claims of negligence, due to the protection of sovereign immunity under Virginia law.[2] The Magistrate Judge, properly accepting the facts as alleged in the Plaintiff's Complaint as true at this juncture,[3] found that the Plaintiff had sufficiently stated her claims against the Correctional Officer Defendants, R & R at 14–54, and that the Correctional Officer Defendants are not entitled to the protection of sovereign immunity. Id. at 12–14. The Correctional Officer Defendants have filed six Objections to the R & R, ECF No. 163, to which the Plaintiff has responded. ECF No. 166.

---

action who served as correctional officers, but they will be referred to herein as the "Correctional Officer Defendants" as their motions are collectively addressed in this Opinion.

**2.** In his Motion to Dismiss, Defendant Bourne sought only to dismiss Counts Three and

Four, and did not invoke the doctrine of sovereign immunity. See Bourne Mem. Supp., ECF No. 69; infra Part III.F and note 4.

**3.** See infra Part II.

## II.

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the court, having reviewed the record in its entirety, shall make a de novo determination of those portions of the R & R to which a party has specifically objected. Fed. R. Civ. P. 72(b). The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1)(C).

■ Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Facial plausibility means that a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). It is, therefore, not enough for a plaintiff to allege facts demonstrating a "sheer possibility" or "mere[ ] consist[ency]" with unlawful conduct. Id. (citing Twombly, 550 U.S. at 557, 127 S.Ct. 1955).

The Supreme Court has offered the following guidance to courts evaluating a motion to dismiss:

[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679, 129 S.Ct. 1937. That is, the court accepts facts alleged in the complaint as true and views those facts in the light most favorable to the plaintiff. See, e.g., Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005). After doing so, the court should not grant the defendant's motion if the plaintiff "demonstrate[s] more than 'a sheer possibility'" that the defendant has violated his rights, by "articulat[ing] facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief ...." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. 1937) (as only quoting "a sheer possibility").

## III.

The Correctional Officer Defendants have submitted six (6) Objections to the R & R. ECF No. 163. Having reviewed the record in its entirety, the court herein makes a de novo determination of those portions of the R & R to which a party has specifically objected. Fed. R. Civ. P. 72(b). The court will address each of the Objections in turn.

### A.  First Objection

■ In the First Objection, the Correctional Officer Defendants state that "the [c]ourt erroneously credits and relies upon allegations asserted collectively against the 'Correctional Officer Defendants,'" and that the Magistrate Judge "errs in denying the Defendants' motions to dismiss on the

strength of allegations that fail to distinguish between the conduct of the individual defendants." Objs. at 1–2. Citing several cases for support, they argue that the Complaint, in making such collective allegations, falls short of the pleading standard for Rule 8(a)(2) of the Federal Rules of Civil Procedure. See id. at 2–3. In response, the Plaintiff argues that "any objection to the 'en masse' treatment of the Correctional Officer Defendants is misplaced," as it is a proper, and simpler, manner of bringing claims against these Defendants as a whole. See Pl.'s Resp. to Objs. at 4–5. The Plaintiff also states that this Objection "further ignores the considerable individual allegations" against these Defendants. Id. at 6.

The Magistrate Judge did not err in crediting the Complaint's collective allegations against the Correctional Officer Defendants. As a whole, the Complaint provides these Defendants with fair notice of the claims and the grounds upon which they rest. See Twombly, 550 U.S. at 555, 127 S.Ct. 1955. The allegations are neither vague nor conclusory, but specific and thorough, with sufficient factual content to allow these Defendants to answer them. Furthermore, the court agrees with the Plaintiff that the cases cited by the Correctional Officer Defendants are "inapposite." Pl.'s Resp. to Objs. at 6. For instance, in the case upon which the Correctional Officer Defendants principally rely, see Objs. at 2, the complaint was "vague as to which party the phrase 'Defendants' refers," having taken "a conclusory and shotgun approach to pleading [that] fails to provide each Defendant with the factual basis for the claim(s) . . . ." Luna–Reyes v. RFI Construction, LLC, 57 F.Supp.3d 495, 503 (M.D.N.C. 2014). That is not true of the instant Complaint, which states specific allegations against the Correctional Officer Defendants, both individually and collectively, with sufficient factual background to

put them on fair notice for defending each claim. The court has reviewed the other cases, as well, and agrees that the complaints addressed therein "similarly do not even approach the level of specificity contained in the instant Complaint." Pl.'s Resp. to Objs. at 6.

Overall, the Complaint here provides the Correctional Officer Defendants with sufficient factual support to give fair notice of the claims against them, as the Magistrate Judge's thorough analysis of each and every claim, against each and every Defendant, abundantly demonstrates. See R & R at 14–54. The Plaintiff has not used the term "Correctional Officer Defendants" in an attempt to engage in "shotgun pleading," but rather, as the Plaintiff has stated, to make the Complaint "shorter and more readable." Pl.'s Resp. to Objs. at 5. Accordingly, the First Objection is OVERRULED.

### B. Second Objection

In the Second Objection, the Correctional Officer Defendants argue that, "[s]tripped of allegations improperly lodged against the indistinct 'Correctional Officer Defendants,' the Complaint fails to make the requisite showing of entitlement to relief against each Defendant." Objs. at 3. The Defendants argue that "[n]owhere is this more apparent than in the case of defendant Whitaker," against whom "the sum total of the allegations . . . is the following: 'Defendant Whitaker kicked Mitchell while he was handcuffed.'" Id. (citing Compl. ¶ 140). Noting that "[t]here is no indication of the time, place, location, or circumstances of this kick; whether Mitchell suffered any injuries; or whether there was a penological justification for the incident," they argue that "[a] more conclusory factual basis for bringing these serious claims against Whitaker is difficult to imagine." Id. at 3–4. Concluding that "[t]he Complaint is replete with allegations

devoid of any factual particulars," the Defendants "ask the [c]ourt to confine its analysis to well-pled facts, disregarding not only the 'lumping together' of Defendants, but also factual allegations stating generally that physical contact occurred, and conclusory allegations that a Defendant 'abused' Mitchell." Id. at 4.

In response, the Plaintiff states that "[t]he Magistrate [Judge] properly concluded that the Complaint amply details the misconduct and indifference of each Correctional Officer Defendant." Pl.'s Resp. to Objs. at 6. The Plaintiff argues that the discussion of Defendant Whitaker, in particular, fails, because it does not "consider many other relevant allegations in the Complaint that the Magistrate Judge correctly cites when discussing Whitaker, such as that Whitaker's actions of kicking Mitchell while he was in handcuffs did not occur in a vacuum ...." Id. at 7 (citing R & R at 43). The Plaintiff also cites the thoroughness of the Magistrate Judge's analysis, which "considers the numerous individual allegations that contain many particulars of time, place, and context," id. at 7, and then provides a detailed overview of the Magistrate Judge's treatment of each and every claim against each of the Correctional Officer Defendants. See id. at 8–15. Ultimately, the Plaintiff concludes that "[t]he Magistrate Judge's analysis clearly shows how the Complaint's allegations support each Count as to each of the Correctional Officer Defendants, and their arguments otherwise are unavailing." Id. at 18.

The Magistrate Judge properly found the Complaint sufficient to survive the Motions to Dismiss. Taking just the allegations against Defendant Whitaker as an example, as the Correctional Officer Defendants view them to be the least sufficiently pled, the Magistrate Judge thoroughly analyzed the claims against him and demonstrated why, at this stage of the proceeding, his Motion should be denied. See R & R at 42–46. Although the only allegation of conduct uniquely addressed toward Defendant Whitaker is his kicking Mitchell while Mitchell was handcuffed, see Compl. ¶ 141, that is not the only allegation brought against Whitaker. Rather, the allegations brought against the Correctional Officer Defendants, as a whole, likewise apply to him. See R & R at 42. Among other things, the Plaintiff alleges that the Correctional Officer Defendants, and, thus, Whitaker, did the following: "sealed Mitchell in his cell by regularly locking shut the 'chuck hole' to Mitchell's cell door"; "regularly denied Mitchell food"; "turned off the water in Mitchell's cell," causing him to be "encapsulated in a cell that reeked from the stench of unflushed urine and feces"; "denied Mitchell clothing, a mattress, a sheet, and blankets," leaving him with a metal sheet for a bed; "oftentimes encouraged NaphCare nurses to bypass Mitchell, asserting to 'not bother with' Mitchell as 'he was crazy,' or words to that effect"; "physically abused" Mitchell, at times forcing him to the ground, dragging him, spraying him with mace, standing on him, and punching and kicking him; and ignored pleas from Mitchell's fellow inmates that Mitchell be helped. Compl. ¶¶ 3–9. Defendant Whitaker, therefore, faces not only the allegation that he kicked Mitchell while Mitchell was in handcuffs, but also the allegations brought collectively against the Correctional Officer Defendants. Taken together, these specific allegations provide Whitaker with a sufficient factual background to place him on fair notice of the claims against him. See Twombly, 550 U.S. at 555, 127 S.Ct. 1955. The same applies to the other Correctional Officer Defendants, for whom the Magistrate Judge also provided a thorough analysis of why each claim against each of them withstands the scrutiny of review for the

Motions to Dismiss. See R & R at 14–54. Accordingly, the Second Objection is **OVERRULED.**

## C. Third Objection

■ In the Third Objection, the Correctional Officer Defendants argue that the Magistrate Judge "gives no weight to exculpatory facts appearing on the face of the Complaint." Objs. at 4. Specifically, they argue that the facts in the Complaint reveal that Mitchell was at relevant times under medical care, particularly with hospital treatment at the end of July 2015, weeks before his death, and also with medical attention in the jail itself. See id. at 4–5. They further argue that, "[w]here an inmate is under the care of medical experts, 'a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.'" Id. at 5 (quoting Iko v. Shreve, 535 F.3d 225, 242 (4th Cir. 2008)). They conclude that the Magistrate Judge "does not identify or discuss these facts," and that, "[g]iving due regard to these facts, the Complaint is insufficient as a matter of law." Id.

In response, the Plaintiff argues that, "[i]n their memoranda in support of their motions to dismiss, the Correctional Officer Defendants did not even contend that Mitchell's visit to Maryview Hospital supplants claims against them," and that "the contention has no credence." Pl.'s Resp. to Objs. at 19. The Plaintiff further notes that, according to the Complaint, Mitchell received no treatment in the late-July 2015 visit to Maryview Hospital, that no cause of his condition was identified, that Mitchell returned to the HRRJ the same day, and that another twenty (20) days passed before his death, without his being taken to the hospital again. See id. (citing Compl. ¶¶ 10, 81). The Plaintiff also notes the Complaint's statements that, upon Mitchell's return from the hospital to the HRRJ, Mitchell was not given proper treatment, Pl.'s Resp. to Objs. at 19 (citing Compl.

¶¶ 10, 81, 83, 120, 125, 127), and that the Correctional Officer Defendants knew of this omission, given their continuing observance of Mitchell, his living conditions, his physical deterioration, and his fellow inmates' calls for them to help. See id. The Plaintiff argues that "[t]he Magistrate Judge rightly cites, among other examples," specific incidents of some of "the Correctional Officer Defendants' indifference to Mitchell's medical needs that occurred well after the Maryview visit . . . ." Id. The Plaintiff also takes issue with the Defendants' reliance on the Iko case, distinguishing it from the instant matter, see id. at 20, and argues that these Defendants "are unable to point to any care allegedly provided by a medical care provider that would somehow alleviate their own liability." Id. at 21. "In sum," the Plaintiff argues, "the Correctional Officer Defendants are being charged for their own failures and their weak efforts to assert otherwise are unavailing." Id.

The Magistrate Judge did not ignore exculpatory facts in the Complaint. Taking the Plaintiff's facts as alleged in the Complaint as true, the Plaintiff has made a plausible claim against each of the Correctional Officer Defendants that they individually ignored Mitchell's serious medical needs. Moreover, the presence of other allegedly liable parties, such as the relevant medical care providers, does not alleviate the Correctional Officer Defendants from having to answer these claims; nor does Mitchell's intervening visit to the hospital, weeks before his death, given that this visit, as alleged, resolved nothing relating to his deteriorating condition and did not result in treatment. See Compl. ¶ 10.

The Correctional Officer Defendants' reliance on the Fourth Circuit's opinion in Iko is misplaced. In Iko, the Fourth Circuit recognized that "a distant prison offi-

cial can generally rely on his medical staff's examinations and diagnoses," but distinguished that situation from the one then facing that court, where the inmate "never received medical treatment." Iko, 535 F.3d at 242–43. This latter circumstance falls under the Plaintiff's allegations here. Therefore, rather than providing a distinction from the instant case, the Defendants have cited authority that confirms the Magistrate Judge's analysis.

Far from exculpating the Correctional Officer Defendants, the Complaint paints a grim picture of an individual in their custody who deteriorated before their eyes over a period of several months, to the point of his eventual death, without the help of anyone beyond the inmates who pled for intervention. Accordingly, the Third Objection is **OVERRULED.**

### D. Fourth Objection

In the Fourth Objection, the Correctional Officer Defendants state that, "[i]n declining to dismiss Count 4, the [Magistrate Judge] gives undue weight to generalized claims of physical contact between the Defendants and Mitchell." Objs. at 5. They state that "[a] plausible showing of entitlement to recovery for excessive force requires more than a generalized allegation of physical force," id. at 5, and that "the Plaintiff must show 'that the actions [of the Defendants] are not rationally related to a legitimate nonpunitive governmental purpose or that the actions appear excessive in relation to that purpose.'" Id. at 6 (quoting Kingsley v. Hendrickson, —— U.S. ——, 135 S.Ct. 2466, 2473, 192 L.Ed.2d 416 (2015) (internal quotation marks omitted)). The Defendants argue that the Magistrate Judge "does not address this test, but instead ... leav[es] the question of the 'objective reasonableness' of the force employed to the fact finder," and that "it is the Plaintiff's burden, at this stage of the proceedings, to provide sufficient factual particulars to make a plausible showing of unreasonableness." Id. at 6.

In response, the Plaintiff states that "[t]he Complaint sets out in specificity the physical abuse to which the Correctional Officer Defendants subjected Mitchell," and that "[t]he abuse detailed in the Complaint is flagrant, excessive, and wrongful." Pl.'s Resp. to Objs. at 21. The Plaintiff argues that a jury could find that the alleged conduct is "excessive and cruel," both in the general sense and "especially in circumstances such as the instant where Mitchell was a person, as pled, who was physically deteriorating, and ... not much of a physical threat anyway." Id. at 22. The Plaintiff concludes that the Magistrate Judge "is correct to find that, assuming Plaintiff's allegations are true, 'such force may be considered non-trivial and objectively unreasonable.'" Id. at 22–23 (citing R & R at 17, 22, 25, 28, 32, 36, 41, 45, 49, 53 (emphasis added by the Plaintiff)).

The Magistrate Judge correctly found Count Four to be sufficiently pled at this initial stage of the proceeding, and the Correctional Officer Defendants are mistaken to object based on the standard in Kingsley, which the Magistrate Judge properly considered. See R & R at 11–12 ("To survive Defendants' motion, Plaintiff must have properly pled that the Defendants (1) applied non-trivial force; and (2) the force employed was objectively unreasonable.") (citing Kingsley, 135 S.Ct. at 2472–73). The crux of this particular objection appears to be that the Magistrate Judge, in applying the standard for objective unreasonableness in claims of excessive force against pretrial detainees, did not recite the full language of that standard. See Objs. at 6 (citing Kingsley, 135 S.Ct. at 2473). However, that does not mean the standard was not applied. Rather, having reviewed the allegations, the Magistrate Judge concluded that the de-

termination of objective unreasonableness should be left to the factfinder. See R & R at 17, 22, 25, 28, 32, 36, 41, 45, 49, 53. The undersigned District Judge agrees.

Overall, the Magistrate Judge applied the Kingsley test appropriately, recognizing that the Plaintiff is only required at this stage to show initial plausibility, not final proof, of the claim. The Plaintiff has alleged numerous instances of the use of force against Mitchell by the Correctional Officer Defendants, from which the court at this juncture, and ultimately the factfinder if material facts remain in dispute, may reasonably infer that the force was non-trivial and objectively unreasonable, and that the Correctional Officer Defendants are liable for this conduct under 42 U.S.C. § 1983, as stated in Count Four. See Compl. ¶¶ 8, 137, 139–150, 239–251. Accordingly, the Fourth Objection is **OVERRULED.**

### E. Fifth Objection

In the Fifth Objection, the Correctional Officer Defendants argue that the Magistrate Judge "gives undue weight to the Defendants' supervisory responsibilities." Objs. at 6. Specifically, because "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior," id. at 6 (quoting Iqbal, 556 U.S. at 676, 129 S.Ct. 1937), the Defendants argue that Defendants Brown, Epperson, S. Whitehead, and R. Whitehead cannot "be called to account for the alleged wrongful acts of their subordinates under § 1983," but that the Magistrate Judge nonetheless "places undue weight on these Defendants' supervisory role" in concluding that each of them "not only worked on Unit 3, but ... was a [sergeant/lieutenant] and supervised other correctional officers who worked and interacted with Mitchell on a

regular basis." Id. at 7 (quoting R & R at 27, 40, 48–49, 52).

In response, the Plaintiff contends that these particular Defendants "confuse the nature of the claims made against them." Pl.'s Resp. to Objs. at 23. The Plaintiff argues that these Defendants are not being sued because of their supervisory roles, but rather, because they "all had intimate personal contact with Mitchell because they are alleged to have physically abused him ... multiple times." Id. (emphasis omitted). Moreover, the Plaintiff argues that all of these Defendants "regularly worked on Mitchell's pod," and that the Magistrate Judge was correct to note their awareness of Mitchell's condition and treatment. See id. at 23–24. Thus, the Plaintiff asserts that "contrary to their objections," these Defendants "are not sued for the unconstitutional conduct of their subordinates under a theory of respondeat superior, but rather for their own constitutional violations." Id. at 24.

Importantly, the Magistrate Judge did not rely on these particular Defendants' supervisory roles in permitting the claims against them under 42 U.S.C. § 1983 to survive the Motions to Dismiss, but rather, on their own conduct. See R & R at 25–29, 37–42, 46–54. The court agrees both with the Plaintiff's assertion and the Magistrate Judge's analysis here. Accordingly, the Fifth Objection is **OVERRULED.**

### F. Sixth Objection

In the Sixth, and final, Objection, the Correctional Officer Defendants challenge the Magistrate Judge's application of sovereign immunity doctrine regarding the claims of negligence against them under Virginia law. See Objs. at 7–9.[4] In the R & R, the Magistrate Judge explained that,

---

**4.** The Sixth Objection does not apply to Defendant Bourne, who has not moved to dismiss the negligence claim. See supra note 2.

regarding state employees facing negligence claims, "[c]ourts in Virginia use 'four non-exclusive factors to assess whether a plea of sovereign immunity should be sustained.'" R & R at 13 (quoting Pike v. Hagaman, 292 Va. 209, 215, 787 S.E.2d 89 (2016) (citing James v. Jane, 221 Va. 43, 53, 282 S.E.2d 864 (1980)). These factors, commonly known as "the James factors," are the following:

(1) The function the employee was performing; (2) The state's interest and involvement in that function; (3) Whether the act performed by the employee involved the use of judgment and discretion; and (4) The degree of control and direction exercised by the state over the employees.

Pike, 292 Va. at 215, 787 S.E.2d 89 (citing James, 221 Va. at 53, 282 S.E.2d 864). Applying these factors, the Magistrate Judge found that, "[a]ccepting the Plaintiff's allegations as true, as is appropriate at the present Rule 12(b)(6) stage, the Defendants' actions are ministerial, and not discretionary, because they had a duty under the Constitution to provide Mitchell with medical care, provide him with proper conditions of detention, and not abuse him." R & R at 13–14. The Magistrate Judge added that "such actions are still ministerial even though the Defendants did not comply with them." Id. at 14. Concluding that the actions were not discretionary, the Magistrate Judge found that "analysis of the four James factors is unnecessary." Id.

The Correctional Officer Defendants argue that the Magistrate Judge "misapplies the operative legal standard," for several reasons. Objs. at 8. First, they state that "the issue of whether the government official exercises 'judgment and discretion' is but one of the 'non-exclusive factors' in the James v. Jane test," and that it "is not a separate element or preliminary question bearing on the applicability of those factors," as the Magistrate Judge suggests.

Id. (citing Pike, 292 Va. at 215, 787 S.E.2d 89 (2016); James, 221 Va. at 43, 282 S.E.2d 864 (1980)).

Second, they state that the Magistrate Judge "analyzes whether the official action at issue involves 'judgment and discretion' solely with reference to the U.S. Constitutional rights at issue in separate counts," while, "[u]ndoubtedly, the daily activities of jail officers involve the application of 'substantial' judgment and discretion." Id. (citing Kingsley, 135 S.Ct. at 2474). They argue that the Magistrate Judge "essentially holds that the sovereign immunity defense, a creature of state law, is rendered unavailable any time a common law claim arises out of any occurrence also alleged to violate a federal constitutional right," with no basis for such a test in Virginia law. Id. They further argue that "[t]he presence or absence of a federal constitutional duty is the wrong point of reference for evaluating a sovereign immunity defense," and that, "[u]nder Virginia law, the appropriate point of reference is 'the act performed by the employee.'" Id. (quoting Pike, 292 Va. at 215, 787 S.E.2d 89).

Third, they argue that "[t]he remaining James v. Jane factors are easily satisfied, as established on the face of the Complaint," noting that "[t]he Commonwealth has a substantial interest, and exercises considerable control over the establishment, maintenance, and operation of prisons," including "the provision of food, clothing, and medical care ...." Id. at 9 (citing Compl. ¶ 43; Va. Code Ann. § 53.1 et seq.; Va. Code Ann. § 53.1–126).

In response, the Plaintiff argues that "[t]he Magistrate Judge correctly concluded that the Plaintiff's assertions of denial of medical care, and that Mitchell was subjected to unfit conditions of confinement, abuse and excessive force, are all ministerial, rather than discretionary, in

nature," and that the Magistrate Judge properly applied the James factors. Pl.'s Resp. to Objs. at 25–26. The Plaintiff states that "the Correctional Officer Defendants misappropriate broad language in Kingsley . . . concerning the challenging task of high-level jail officials to claim that any and all failures of correctional officers—no matter how repugnant or repeated—will always fall into the realm of discretionary functions." Id. at 26. The Plaintiff states that, in so doing, the Correctional Officer Defendants imply that "any and all correctional officers will always enjoy absolute immunity, even if they deprive a detainee of food, lock the detainee in a feces-filled cell, physically abuse the detainee, and look the other way when his health obviously and steadily declines to eventual death." Id. Finally, the Plaintiff "does not dispute the Correctional Officer Defendants' latest assertion that the 'act' performed by (or failed to be performed by) the governmental employee is the appropriate point of reference in evaluating the applicability of sovereign immunity," as she had stated the same in her Response to the Motions. Id. at 26–27 (citing Resp., ECF No. 120, at 21–23)).

Having reviewed the matter de novo, the court agrees with the Magistrate Judge that the Correctional Officer Defendants are not entitled to sovereign immunity from the claims of negligence. However, as explained below, the court reaches this conclusion based on different reasoning.

### 1. General Treatment of the James Factors

■ To begin, the court is confident that the Magistrate Judge, having recited the James factors, appropriately considered each of them in reaching his conclusion. After resolving one of the James factors in the Plaintiff's favor, the Magistrate Judge explained that "analysis of the four James factors is unnecessary." R & R at 14. The Correctional Officer Defendants

object to this statement, maintaining that it suggests the issue of discretion is "a separate element or preliminary question bearing on the applicability of [the James] factors," whereas the issue of discretion "is but one of the 'non-exclusive factors' in the James v. Jane test." Objs. at 8. However, the Magistrate Judge's statement does not reflect a lack of consideration for the James factors. Rather, it shows that the Magistrate Judge, having already resolved the James factor regarding discretion, decided that the absence of discretion was a sufficiently strong reason for sovereign immunity not to apply, and that further analysis of the James factors was therefore unnecessary. This is appropriate under Virginia law, where the James factors do not have any assigned weight, and where the factor regarding discretion, to the exclusion of other factors, has carried the entire weight of negative sovereign immunity rulings. See, e.g., Friday–Spivey v. Collier, 268 Va. 384, 601 S.E.2d 591 (2004) (reversing a lower court's finding that a county fire truck driver was entitled to sovereign immunity from negligence solely due to the employee's failure to meet the James factor regarding discretion, and despite the parties' agreement that the employee met the other three factors). Moreover, by citing the "non-exclusive" nature of the James factors, the Correctional Officer Defendants appear to misinterpret the meaning of "non-exclusive." See Objs. at 8 (citing Pike, 292 Va. at 215, 787 S.E.2d 89). The term "non-exclusive" does not preclude a single James factor from being dispositive. Rather, the James factors are not the exclusive list of factors in considering sovereign immunity for a state employee. See, e.g., Messina v. Burden, 228 Va. 301, 313, 321 S.E.2d 657 (1984) (stating that the James factors are "[a]mong the factors to be considered") (emphasis added). Indeed, the Correctional Officer Defendants acknowledged this proper defini-

tion, and advocated for it, in a previous filing. See Reply at 10–11. Accordingly, this particular objection regarding the Magistrate Judge's overall treatment of the James factors is incorrect.

### 2. Specific Application of the James Factors

The Correctional Officer Defendants also object to the Magistrate Judge's specific conclusion that the function in question was not discretionary, but ministerial. See Objs. at 8. In the R & R, the Magistrate Judge reasoned that the function was not discretionary "because they had a duty under the Constitution to provide Mitchell with medical care, provide him with proper conditions of detention, and not abuse him." R & R at 14. The Defendants object to this finding because "[t]he presence or absence of a federal constitutional duty is the wrong point of reference for evaluating a sovereign immunity defense," and that "the appropriate point of reference is 'the act performed by the employee.'" Objs. at 8 (citing Pike, 292 Va. at 215, 787 S.E.2d 89).

■ In evaluating a state actor's sovereign immunity from a claim of negligence under Virginia law, "the Court must assess whether the act as to which liability is asserted involved the exercise of judgment and discretion." Heider v. Clemons, 241 Va. 143, 145, 400 S.E.2d 190 (1991) (emphasis added). Because the liability in question here arises from negligence, the relevant acts or omissions to consider must be those related to the claims of negligence, and not to other claims. In other words, conduct related to intentional torts, such as physical abuse, or related to the deprivation of constitutional rights, should not guide the sovereign immunity analysis.

It is for this reason, as well, that the Correctional Officer Defendants are incorrect to rely on Kingsley for their assertion that "the daily activities of jail officers involve the application of 'substantial' judgment and discretion." Objs. at 8 (citing Kingsley, 135 S.Ct. at 2474). In Kingsley, the United States Supreme Court was reviewing claims by a pretrial detainee under 42 U.S.C. § 1983 against jail officers for using unconstitutionally excessive force. See Kingsley, 135 S.Ct. at 2470. The Supreme Court's reference to the substantial discretion of jail officers was therefore being applied in the context of this federal claim, with the particular concern that "[o]fficers facing disturbances 'are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving.'" Id. at 2474 (quoting Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Thus, while objecting to the Magistrate Judge's reliance on federal constitutional duty for evaluating immunity from the state law claims against them, citing such duty as "the wrong point of reference," the Correctional Officer Defendants themselves, in the very same objection, have advocated for a broad vision of discretion that exists in the unique scenario of federal claims for unconstitutionally excessive force. The Defendants cannot have it both ways. Under Virginia law, a court considers "whether the act complained of involved the use of judgment and discretion." Messina, 228 Va. at 313, 321 S.E.2d 657 (citing James, 221 Va. at 53, 282 S.E.2d 864) (emphasis added). Accordingly, the court will address whether the acts or omissions of the Correctional Officer Defendants, as related to the claims of negligence, involved the use of judgment and discretion.

■ The Virginia Supreme Court "ha[s] recognized that '[v]irtually every act performed by a person involves the exercise of some discretion,' and therefore, the presence of discretion is not always determinative." Pike, 292 Va. at 217, 787 S.E.2d 89 (second alteration in original) (quoting

**720**

James, 221 Va. at 53, 282 S.E.2d 864). But see Friday–Spivey, 268 Va. at 391, 601 S.E.2d 591 (determining sovereign immunity not warranted for state employee solely on lack of discretion). Moreover, the James factor of discretion has "two important caveats." Id. "First, '[t]he defense of sovereign immunity applies only to acts of judgment and discretion which are necessary to the performance of the governmental function itself." Id. (alteration in original) (quoting Heider, 241 Va. at 145, 400 S.E.2d 190). "Second, regardless of the existence of discretion in the overall job, there is no sovereign immunity for the negligent performance of ministerial acts." Id. (citing First Virginia Bank–Colonial v. Baker, 225 Va. 72, 78, 301 S.E.2d 8 (1983)).

Here, while the Correctional Officer Defendants may have discretion in their jobs overall, they are not alleged to be liable for acts or omissions involving such a general level of discretion. In Pike, a nurse was monitoring a patient after "a complex and lengthy surgery lasting over 12 hours," when it was essential to position the patient's head in a manner that avoided pressure on the patient's neck, in the vicinity of an incision made during the surgery. Pike, 292 Va. at 212–13, 787 S.E.2d 89. The Virginia Supreme Court found that the defendant nurse was not performing a ministerial act because she "had to exercise her discretion to determine how to carry out the doctor's orders," and "prioritize and address many tasks" within an extended "sphere of responsibility." Id. at 217–18, 787 S.E.2d 89. Moreover, "[t]he doctors overseeing [the patient's] care did not write any orders specifically governing the position of his head or neck," and "[a] surgeon at the hospital testified that he would rely on the skill and expertise of the nurse to position the patient's head appro-

priately following surgery." Id. at 213, 787 S.E.2d 89. Given the discretion in positioning the patient's head, as well as the other "many tasks" the nurse was required to handle in her overall "sphere of responsibility," entailing " 'minute to minute' care" in a critical phase of the patient's recovery, the James factor regarding discretion was satisfied. See id. at 217–18, 787 S.E.2d 89.

Contrary to the Correctional Officer Defendants' contention, see Objs. at 9, they did not possess a similarly broad "sphere of responsibility" during the acts or omissions giving rise to the instant negligence claims. Simply put, deciding whether to let a pretrial detainee under one's care thirst and starve to death over the course of several months, in appallingly unsanitary conditions, does not require the exercise of much, if any, discretion or judgment. See Jennings v. Hart, 602 F.Supp.2d 754, 759 (W.D. Va. 2009) (denying a plea of sovereign immunity for Virginia negligence claims against defendants who "allegedly ignored [the inmate's] worsening physical condition and repeated requests for help for a period of ten days after ... a trained nurse practitioner [ ] referred [the inmate] to a neurologist").

The instant case also differs from a recent one in this district, where the court granted sovereign immunity for negligence claims against officers serving a regional jail authority. See Dowdy v. Pamunkey Regional Jail Authority, No. 3:14cv003, 2014 WL 2002227 (E.D. Va. May 15, 2014).[5] In Dowdy, the plaintiff was the administrator of the estate of an inmate who committed suicide four days after entering the Pamunkey Regional Jail. Id. at *1. The deputy sheriffs who initially brought this inmate to the jail told the intake officer that the inmate had ex-

5. Although Dowdy is directly relevant to the Defendants' arguments, the parties did not mention or cite this case in the multiple writ-

ten briefings and the hearing on these Motions.

pressed a desire to kill himself, and the individual who performed the inmate's preliminary medical screening allegedly knew of this suicidal intent. Id. at *1–2. Despite this knowledge and the availability within the infirmary of individual cells designed for suicide watch, the inmate was given a standard bedroom, complete with bedsheets, which he eventually used to commit suicide. Id. at *2. The court ultimately ruled that all of the individual defendants were protected by sovereign immunity from the state claims of negligence, having satisfied each factor in Virginia's four-factor test. Id. at *4–5. Regarding the fourth factor, the court found that the defendants' actions were discretionary, because they were required "to exercise judgment and discretion in receiving, classifying, and placing incoming inmates." Id. at *4.

In terms of discretion, the Dowdy defendants differed greatly from the Correctional Officer Defendants in the instant case. The conduct there required a significant level of judgment, as the officers and the medical examiner had to weigh the likelihood that the inmate would act upon his stated desire to commit suicide. Moreover, the defendants were specifically vested with "the authority to assess the physical and mental health of arriving inmates, screen for 'dysfunctional' behaviors, personally interview each arriving individual, and make prison housing decisions and assignments based on [their] subjective determinations." Id. at *4. By contrast, the Correctional Officer Defendants here, at least for the acts or omissions giving rise to the claims of negligence, were not allegedly facing any such complex situation that required the use of judgment and discretion. Rather, they were allegedly facing

decisions such as whether Mitchell should be allowed to eat and drink, and live in minimally sanitary conditions. In this way, the Correctional Officer Defendants are more akin to the defendants in Jennings, who were not immune from negligence claims, except, rather than ignoring the inmate's worsening condition for a period of ten days as in Jennings, the Correctional Officer Defendants here allegedly did so for a period spanning several months. See 602 F.Supp.2d at 759.

As the above cases show, the extent to which discretion exists depends on the circumstances. Simply put, under Virginia law, sovereign immunity does not protect state employees from negligence claims when they were engaged in conduct that "did not involve special risks arising from the governmental activity, or the exercise of judgment or discretion about the proper means of effectuating the governmental purpose of the ... employer." Heider, 241 Va. at 145, 400 S.E.2d 190.[6] The overall job of a jail officer is not always ministerial, given the frequency of "special risk" situations requiring the exercise of discretion, such as breaking up a fight among inmates, or gauging the immediate risk of harm an inmate presents to the inmate or others. However, a jail officer does encounter ordinary circumstances where the duty of care is a ministerial obligation. Such would be the case of an inmate's gradual deterioration over the course of several months, with plainly obvious deficiencies in his living conditions and treatment, accompanied by frequent, but ignored, pleas for help by fellow inmates. Therefore, while ensuring that a pretrial detainee has access to food and water, and to sanitary conditions, is essential for the

**6.** A classic example, found in Heider, is the contrast between "ordinary [vehicle] driving situations [where] the duty of care is a ministerial obligation," and other driving situations, such as "vehicular pursuit by a law enforcement officer," which entails special risks and requires a heightened level of discretion and judgment to serve a governmental purpose. Heider, 241 Va. at 145, 400 S.E.2d 190.

governmental purpose of maintaining custody of an accused individual pending adjudication, performing that function does not entail any "special risk" requiring the exercise of judgment and discretion. To the contrary, it is a ministerial function that does not warrant the protection of sovereign immunity from claims of negligence in this regard.

For these reasons, the Correctional Officer Defendants lacked judgment and discretion in their conduct related to the Plaintiff's claims of negligence against them, and, therefore, they fail to satisfy the James factor regarding discretion. The court agrees with the Magistrate Judge that this factor is dispositive, under applicable Virginia law, and that the Correctional Officer Defendants are not protected by sovereign immunity from the Plaintiff's claims of negligence here. Accordingly, the Sixth Objection is **OVERRULED.**

### IV.

In conclusion, the Correctional Officer Defendants' Objections are **OVERRULED,** and the Magistrate Judge's R & R is hereby **ADOPTED AND APPROVED** with respect to denying the Defendants' Motions to Dismiss, but **MODIFIED** with respect to the reasons for denying the Defendants the protection of sovereign immunity for the state tort claims of negligence. Accordingly, the Motions to Dismiss (ECF Nos. 64, 66, 68, 70, 72, 74, 76, 78, 80, and 82) are **DENIED.**

The Clerk is **DIRECTED** to send a copy of this Opinion to counsel for all parties.

**IT IS SO ORDERED.**

